IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, TRANSPORTATION DIVISION, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 15-cv-00549-JPG-SCW ) |
| TERMINAL R.R. ASS'N OF ST. LOUIS, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Terminal Railroad Association's ("TRRA") Motion (Doc. 7) to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff filed a timely Response (Doc. 9) and the Defendant filed a Reply (Doc. 10). Although reply briefs are discouraged under Local Rule 7.1(c), the defendant states an exceptional circumstance and the Court will consider Defendant's reply brief. A hearing on Defendant's Motion to Dismiss was held on January 28, 2016.

The Defendant argues that this Court lacks subject matter jurisdiction as this case is subject to mandatory arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et. seq.* Challenges to the court's subject matter jurisdiction are considered under Federal Rule of Civil Procedure 12(b)(1). Under that rule, a defendant can challenge a court's subject matter jurisdiction in two ways. He may make a facial challenge to the sufficiency of the complaint's jurisdictional allegations as a matter of law, in which case, as with a Rule 12(b)(6) motion, all well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

Alternatively, where a complaint is facially sufficient, a defendant may challenge the actual facts establishing jurisdiction, in which case the plaintiff is not entitled to have his allegations taken as true or to have any inferences drawn in his favor. *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). To resolve a challenge to the facts, a court may receive and weigh evidence outside the allegations in the complaint to determine if it has subject matter jurisdiction over the case. *Id.* In either case, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Lee*, 330 F.3d at 468.

In the case at bar, the defendant challenges the facts on which the plaintiff relies to establish subject matter jurisdiction. Thus, the plaintiff must present evidence sufficient to resolve the factual dispute.

1. **Background**.

Plaintiff, International Sheet Metal, Air, Rail and Transportation Union, Transportation Division ("SMART") is an unincorporated labor organization representing train service employees. Defendant, Terminal Railroad Association of St. Louis ("TRRA") is a Railroad Association[1]. Both parties agree that they are subject to RLA.

SMART filed it complaint seeking declaratory and injunctive relief alleging that TRRA violated the April 10, 1975 and June 24, 1992[2] agreements by unilaterally reducing the number of required crew members. SMART claims that all crews must consist of two members (one foreman and one helper). Specifically, that Lead/Hump[3] crews must consist of two members and

---

[1] According to the Complaint, TRRA is owned by five Class I rail carriers – BNSF Railway Company, Union Pacific Railroad, CSX Transportation, Inc., Norfolk Southern Railway and Canadian National Railway.
[2] There is also a March 5, 2004 Agreement between the parties regarding D.S.A. Lead/Hump assignments which also requires two member crews.
[3] Lead/Hump crews initially consisted of a foreman, helper, and crest retarder foreman.

that, with the elimination of the crest retarder foreman[4], one Lead/Hump crew member is now assuming the duties of the crest retarder foreman resulting in a one member Lead/Hump crew.

The defendant argues that it was permitted to eliminate the crest retarder foreman[5] pursuant to the March 2001 agreement and that the March 2001 agreement also provided that the remaining two members were to assume the crest retarder foreman's duties not replaced by the computer. As such, the Lead/Hump crews remain at two members and they have not violated the June 24, 1992 agreement.

### 2. Analysis.

The analysis of whether this Court has jurisdiction pivots on the determination of whether the dispute over the reduction of the crew members is a minor or major dispute. Although the RLA does not, in itself, refer to "major" or "minor" disputes, the Supreme Court in *Elgin, J. & E. RY. Co., v. Burley, et al.*, 65 S.Ct. 1282 (1945) used the terms to distinguish claims under RLA Section 2, 45 U.S.C. § 152 and RLA Section 3, 45 U.S.C. § 153.

> In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world. The former present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. . . . The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. *Id* at 723, 724.

A minor dispute is subject to Section 3 which requires compulsory and binding arbitration before the National Railroad Adjustment Board. The Adjustment Board is composed

---

[4] It is the court's understanding that the crest retarder foreman would manually handle duties that have now been replaced by computers.
[5] Currently known as a Bowl Processor.

of four divisions and the First Division has "jurisdiction over disputes involving train-and yard-service employees of carriers; that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees." 45 U.S.C. § 153(h).

Minor disputes are those "arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" and "[i]n a major dispute, a union and a railway seek to change the terms of their collective bargaining agreements." *Brotherhood of Maintenance of Way Employees Division/IBT v. Norfolk Southern Railway Co.*, 745 F.3d 808, 810 (7th Cir. 2014).

> Thus, the formal demarcation between major and minor disputes does not turn on a case-by-case determination of the importance of the issue presented or the likelihood that it would prompt the exercise of economic self-help. Rather, the line drawn in *Burley* looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement. Co*nsol. Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 305, 109 S. Ct. 2477, 2481-82, 105 L. Ed. 2d 250 (1989).

As such, the Supreme Court held that, "We hold that if an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (*i.e.,* the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 310, 109 S. Ct. 2477, 2484, 105 L. Ed. 2d 250 (1989).

Further, "Referring arbitrable matters to the Board will help to "maintain agreements," by assuring that collective-bargaining contracts are enforced by arbitrators who are experts in "the common law of [the] particular industry." *311 *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S., at 579, 80 S.Ct., at 1351. *Id* at 310-11. "[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Ry. Labor Executives Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987).

In this case, TRRA argues that it "exercised its express rights under the March 2001 Agreement." It further argues that the claim is arguably justified by the terms of the 2001 Agreement; and therefore, the claim is neither obviously insubstantial or frivolous, nor made in bad faith. TRRA cites to initial paragraph of the 2001 Agreement which states "carrier shall have the right to discontinue (abolish) the positions of Crest Retarder Foreman[6]" and to paragraph 4 that states, "[a]ll active trainmen that stand to work with the Pro-Yard System[7] will be required to train and learn the new system and the required computer related work."

SMART argues that the crest retarder foreman position was not actually eliminated and that by requiring a crew member to perform the duties of a crest retarder foreman has resulted in a one member Lead/Hump crew in violation of the 1992 agreement. SMART argues that the defendant's argument is frivolous "in light of the express language" of the 1992 agreement.

SMART further argues that, "The issue is not whether the elimination of the CRF raises a "major or "minor dispute, but whether the removal of the foreman from the crew in violation of the crew consist provisions is a major dispute." (Doc. 9, pg 9).

---

[6] Neither party disputes the fact that TRRA was permitted to eliminate the crest retarder foreman position.
[7] Soft-ware system that performs some of the functions previously performed by the crest retarder foreman.

SMART cites to *Wheeling & Lake Erie R.R. Co. v. Brotherhood of Locomotive Engineers and Trainmen*[8], 789 F.3d 681, in which the Court of Appeals, Sixth Circuit overruled a district court's finding that a dispute was minor and held a major dispute existed with regard to the "crew consist" provision of the parties' agreement. However, in that matter, there was no contractual basis for the carrier's removal of crew members so the Court found it was an attempt to change the working conditions and violated the status quo based on the provisions of the parties' current agreement. It is further noted that in *Wheeling*, the parties had discussed and failed in negotiations with regard to the issue of crew members and the Railroad implemented the changes it sought without proper procedures under the RLA or reliance on any current agreement between the parties.

SMART also cites to *United transportation Union v. Illinois Central Railroad Company*, 1997 WL 560924 (N.D. Mississippi).[9] That case also involved a carrier's violation of a crew assignment agreement, but the facts of the case indicates that there were clear violations of the agreement (*i.e.* no brakeman/helper assigned or on the train during various trips.) It was not a dispute of having the required number of members present, but involved in different tasks.

In this matter, it appears that there are two members assigned to the Lead/Hump crew and that the dispute comes down to whether the additional crest retarder foreman duties assigned to those members make it such that the member performing those duties is so occupied as to invalidate him/her as being the second member of the crew.

Further, both parties cite to agreements - which they argue - are relevant to the dispute in question. TRRA argues that the March 2001 agreement allows them to utilize a crew member to perform some of the duties of the former crest retarder foreman and SMART argues that in doing

---

[8] The Court notes that this case is not controlling precedent, but will consider the reasoning of the decision.
[9] The Court notes that this case is also not controlling precedent, but wil consider the reasoning of the decision.

so, it actually reduces the crew to one and violates the 1992 agreement.

Therefore, the Court finds that this is a dispute pertaining to the terms of existing agreements and determines the dispute to be minor. It further finds that TRRA's claim is arguably justified by the terms of the 2001 Agreement and is neither obviously insubstantial or frivolous.

3. **Conclusion**.

Federal Rule of Civil Procedure 12(h)(3) mandates that, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Court finds that a minor dispute exists between the Defendant and the Plaintiff and that The National Railroad Adjustment Board has exclusive jurisdiction over minor dispute. As such, this Court lacks subject matter jurisdiction.

Based on the above, Defendant Terminal Railroad Association's Motion (Doc. 7) to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED** and this matter is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

**DATED:** 2/1/2016

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**